UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| FAYE DOUGLAS, | ) |
|     Plaintiff, | ) Case No. 3:16-cv-00048-GFVT |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| FIVE STAR HOSPITALITY, | ) **&** |
| | ) **ORDER** |
|     Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Faye Douglas contends she was retaliated against and ultimately fired by her employer for complaining of racial discrimination within the workplace. As explained below, Five Star Hospitality, LLC terminated Douglas following complaints it received about Douglas's interactions with customers, and Douglas has not established a prima facie case for retaliation. Even if she could establish a prima facie case of retaliation, Douglas has not demonstrated that the legitimate, nondiscriminatory reason given for her termination was pretextual. For that reason, Five Star Hospitality's motion for summary judgment is **GRANTED**.

**I**

Faye Douglas was hired in 2005 to be the general manager of a Frankfort, Kentucky, Hampton Inn, owned by Defendant Five Star Hospitality, LLC ("Five Star"). [R.12-1 at 1.] Her responsibilities included "maintaining the cleanliness of the property, hiring and firing employees, and ensuring the quality of guest experiences." *Id.* She served in this capacity until her termination in May 2015. [*See* R. 1.]

In October 2014, Howard "Max" Allen, part owner of Five Star, had an occasion to be

present at the hotel. [R. 12-1 at 2; R. 12-7.] According to Douglas, during Allen's visit, a group of homeless individuals entered the hotel and obtained job applications from the front desk. [R. 16 at 2.] At that time, again according to Douglas, Allen spoke with Douglas and advised her "under no certain terms was she to hire people of color," and that she "was only allowed to hire Anglo-Saxons." [*Id.*] According to Allen, however, the conversation on that date never involved race or color, but instead he advised Douglas that "she needed to hire people who had a hospitable appearance and could operate the hotel reservation system." [R. 12-1 at 2; R. 12-7.] Douglas reported this conversation to her immediate supervisor, Marc Stone, who believed Douglas must have misunderstood Allen and who advised Douglas to continue hiring "the best candidates regardless of their race. . . ." [R. 12-8 at 3.]

According to records and affidavits, several complaints were lodged concerning Douglas. [*See* R. 12-2; R. 12-8; R. 12-9.] In May 2015, Douglas received notification that a representative from Montaplast Corp. ("Montaplast") had filed a complaint with the official Hampton Inn complaint system. [R. 12-1 at 2.] At the time, Montaplast was the hotel's largest corporate client and frequently booked rooms at the Hampton Inn for its representatives, employees, recruits, and suppliers. [R. 12-1 at 1-2; R. 12-2 at 5.] Montaplast's complaint dealt the hotel's accounting practices and with late invoices Montaplast received from the hotel. [*See* R. 12-2 at 4-6.] Douglas became upset after learning of this complaint because she felt the information in this complaint was false. [R. 12-1 at 2.] Douglas called Montaplast representative Kevin Buehner and was very rude to him on the phone. [*Id.*] Sometime after Douglas's call to Buehner, Buehner notified Stone of the events surrounding the complaint. [R. 12-8 at 2.] On May 22, 2015, Stone met with Douglas to discuss the complaint. [*Id.*] Douglas claimed the information in the complaint was fabricated, claimed the Montaplast representative had a

2

personal vendetta against her, and refused to apologize. [*Id.*] The meeting culminated with Stone terminating Douglas's employment. [*Id.*]

Ms. Douglas asserts that she filed an EEOC claim before bringing this action in 2016. [*See* R. 1]. She alleges her termination was retaliation for having complained of racial discrimination, in violation Title VII and KRS Chapter 344. [R. 1 at 3.] Four Star filed a motion for summary judgment claiming (1) Ms. Douglas cannot establish a prima facie case of retaliation; and (2) even if she could establish a prima facie case, Ms. Douglas could not show that Four Star's reason for termination was somehow pretextual. [R. 12-1 at 5.] Ms. Douglas responded alleging genuine issues of material fact. [R. 16.]

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its

burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**B**

Ms. Douglas alleges Four Star violated her rights under Title VII of the Civil Rights Act of 1964, and the Kentucky Civil Rights Act, KRS § 344.450, which, among other things, prohibits employers from retaliating against employees who oppose discriminatory practices in the workplace. *See* Ky. Rev. Stat. Ann. § 344.280(1). Retaliation claims brought under the Kentucky Civil Rights Act ("KCRA") are analyzed under the same framework used to analyze similar federal claims. *See Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *Hamilton v. Gen. Elec. Co.*, 556 F. 3d 428, 435 (6th Cir. 2009) ("Retailiation

4

claims under the KCRA are evaluated under the same standard as we use to evaluate federal Title VII claims."); *See also Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 801-01 (Ky. 2004).

Where a plaintiff seeks to prove a claim of retaliation, a burden shifting framework applies. First, the plaintiff must establish a prima facie case of retaliation by showing:

> (1) that she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment."

*Morris v. Oldham Cty. Fiscal Court*, 201 F. 3d 784, 792 (6th Cir. 2000) (citations omitted). Once a plaintiff makes out a prima facie case, the burden then shifts to the defendant employer to "'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once defendant employer articulates a nondiscriminatory reason for its action, the burden shifts back to the plaintiff, who "then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). While the burden of production shifts throughout the analysis, the burden of persuasion remains with the plaintiff. *Id.*

## C

Ms. Douglas ultimately fails to establish a prima facie case of retaliation. Regarding the first prong, the record clearly indicates Douglas engaged in a protected activity, that is she complained to Five Star management about allegedly discriminatory comments made by one of Five Star's owners. [R. 12-8 at 2.] Next, there is ample evidence to suggest Five Star, through management, was aware of Ms. Douglas's exercise of a protected right. [*Id.*] Ultimately,

Douglas experienced an adverse action, that is her termination from employment at the Hampton Inn. [R. 12-7 at 2; R. 12-8 at 2.] However, regarding the fourth prong of the prima facie test, Douglas cannot establish that there was a causal connection between her complaining of racially discriminatory practices and her termination. While there exists evidence in the record to assist Ms. Douglas in satisfying the first three prongs of the analysis, she factually fails to establish a causal connection between her protected activity and the adverse employer action.

Ms. Douglas alleges that her termination was in retaliation to her complaining about Mr. Allen's racially charged instructions not to hire persons of color. [*See generally* R. 1.] While she never alleges in her complaint that there was a conspiracy against her, Douglas later suggests that Five Star colluded with the Montaplast representative to fabricate an official complaint, which ultimately led to her termination. [R. 16 at 5.] Douglas, however, points to no other evidence in the record, other than her self-serving comments, to substantiate the conspiracy allegation. Even if these barebones assertions were sufficient to support a prima facie showing – which they are not – there is not enough evidence to survive summary judgment because Douglas has neither gone beyond the pleadings to provide specific facts demonstrating a genuine issue for trial, nor provided significant probative evidence to support her position. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Hall Holding*, 285 F.3d at 424.

**D**

Even if Ms. Douglas had established a prima facie case of retaliation against Five Star, she has provided no evidence that Five Star's reasons for terminating her employment were pretextual. Once a plaintiff makes out a prima facie case, the burden then shifts to the defendant employer to "'articulate some legitimate, nondiscriminatory reason' for its actions." *Morris*, 201 F. 3d at 792 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). Once defendant employer

6

articulates a nondiscriminatory reason for its action, the burden shifts back to the plaintiff, who "then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.* (quoting *Burdine*, 450 U.S. at 256).

Ms. Douglas was terminated in May 2015. [R. 1 at 3.] Five Star has indicated that the reason for terminating Douglas was due to her rudeness toward and unacceptable treatment of a representative from a large corporate client. [R. 12-7 at 2; R. 12-8 at 2.] Additionally, the record indicates Montaplasts's complaint was not the only complaint Hampton Inn received concerning Ms. Douglas's treatment of customers, which further supports the termination reasons given by Five Star. [*See* R. 12-9.] Douglas provides no evidence or support to indicate her termination was, in any way, related to her complaint regarding Allen's discriminatory comments. There was a significant span of time between the alleged comments in October 2014, and Douglas's termination in May 2015. During that time, according to the record, Douglas (1) received several bonuses, (2) only once voiced her concerns of Allen's comments, and (3) never indicated her employer treated her differently for voicing her concerns. [*See* R. 12-8.] Douglas provides no evidence whatsoever to contradict Five Star's reasons for terminating her employment. Thus, even if Ms. Douglas could establish a prima facie case for retaliation, she cannot meet the burden of establishing Five Star's reasons for terminating her employment were pretextual.

## III

For the foregoing reasons, and being otherwise sufficiently advised, the Court hereby **ORDERS** that the Defendant's Motion for Summary Judgment [R. 12] is **GRANTED.** Judgment in favor of Defendant shall be entered contemporaneously herewith.

This 9th day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge